[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————

No. 92-4491

———————

D. C. Docket No. 91-10021-CR-JLK

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/16/03
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS PERULENA,

Defendant-Appellant.

———————

Appeal from the United States District Court
for the Southern District of Florida

———————

**(July 24, 1998)**

Before TJOFLAT and COX, Circuit Judges, and HANCOCK*, Senior District Judge.

———————————————————————

*Honorable James H. Hancock, Senior U. S. District Judge for the Northern District of Alabama, sitting by designation.

TJOFLAT, Circuit Judge:

From May of 1988 through July of 1991, Jose Romeu operated a successful drug smuggling ring in south Florida. Columbian suppliers of marijuana and cocaine would fly bales of the drugs to an area near the Bahamas and drop them into the sea; boats operated by Romeu's associates would then retrieve the drugs and transport them to the Florida Keys, where they would be off-loaded and distributed to drug dealers. Romeu's drug smuggling enterprise came to an end in July of 1991, when a Southern District of Florida grand jury returned a seven-count indictment against Romeu and thirteen of his accomplices. Appellant Jesus Perulena was charged in two of the counts.

Perulena was charged in Counts I and IV of the indictment. Count I alleged that, from May of 1988 through May of 1989, Romeu, Perulena, and five others[1] conspired to possess with intent to distribute marijuana, and conspired to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count IV alleged that, in May of 1989, Romeu, Perulena, and three others[2] possessed with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

By the time the case came to trial, five of the fourteen defendants were fugitives -- Romeu, Pedro Gonzalez, Francisco Martinez-Estrada, Francisco Lopez, and John Doe a/k/a

---

[1]    In addition to Romeu and Perulena, those charged in Count I were Pedro Gonzalez, Hector Mendoza, Francisco Martinez-Estrada, Raul Jimenez, and Andres Pintado.

[2]    Two of these others were Count I defendants, Pedro Gonzalez and Andres Pintado; the other defendant named in Count IV was Francisco Lopez.

"Javau" -- and seven had pled guilty.[3] Perulena and Domingo Gonzalez were the only indictees to stand trial.

Perulena and Gonzalez were tried together in a four-day jury trial. The proof of guilt was overwhelming; it included the testimony of five of the seven defendants who had pled guilty -- Manuel Mesa, Geovanni Gomez, Carlos Socarras, Andres Pintado, and Richard Roe, a/k/a "El Cancharco" and "Hidle" -- as well as several unindicted members of the Romeu organization. The jury found both Perulena and Gonzalez guilty as charged. On May 19, 1992, the court sentenced Perulena and Gonzalez under the guidelines promulgated by the United States Sentencing Commission to identical 292-month terms of imprisonment on each count,[4] to be served concurrently, followed by five-year terms of supervised release on each count, also to be served concurrently. Perulena subsequently appealed, challenging both his convictions and his sentences.[5]

---

[3] Two of the seven defendants who pled guilty -- Hector Mendoza and Richard Roe, a/k/a "El Cancharco" and "Hidle" -- consented to plead guilty and be sentenced in districts other than the Southern District of Florida pursuant to Federal Rules of Criminal Procedure Rule 20.

[4] Relying on the presentence investigative report (the "PSR") prepared by the district court's probation office for each defendant's sentencing hearing, the district court determined that the guideline sentencing range for both defendants was the range prescribed for an offense level of 40 and a criminal history category of I; that range called for a term of imprisonment of 292-365 months. For each offense the court sentenced both Perulena and Gonzalez at the low end of this sentencing range.

[5] Perulena and Gonzalez initially filed a joint appeal of their convictions and sentences. At oral argument, however, the panel of this court assigned to hear the case granted Perulena a continuance and heard oral argument only as to Gonzalez' appeal. Gonzalez' case subsequently was remanded to the district court for resentencing. See United States v. Perulena, 83 F.3d 435 (11th Cir. 1996) (unpublished table decision). Perulena thereafter presented his appeal at oral argument before this panel, and this opinion only addresses the convictions and sentences of Perulena.

Perulena's challenges to his convictions are devoid of merit;[6] we therefore affirm his convictions without further comment.  See Eleventh Circuit Rule 36-1.  As for Perulena's sentences, we conclude that the district court misapplied the United States Sentencing Guidelines in determining the quantity of drugs for which he should be held accountable, and therefore erred in arriving at the sentencing range for Perulena's offenses.[7]  Because the error was not harmless, we vacate Perulena's sentences and remand his case for resentencing.

I.

According to the evidence adduced at trial, Perulena joined the Romeu marijuana conspiracy in the conspiracy's final days, in May of 1989, for the purpose of assisting in the transportation of 7,000 pounds of marijuana from the drop site at sea to Islamorada in the Florida Keys, where it would be off-loaded.  The conspirators took two boats to transport the marijuana from the drop site.  One boat broke down, however, and the conspirators were able to bring only 3,500 pounds of marijuana to shore.  The PSR prepared by the district court's probation office held Perulena accountable for all 7,000 pounds, approximately 3,175 kilograms, that the conspirators had planned to import, and another 11,794 kilograms of marijuana that the Romeu organization successfully smuggled into the United States in June of 1988, eleven months before

---

[6]     Perulena contends that his convictions should be set aside, and judgment of acquittal entered, on the ground that the evidence was insufficient to support his convictions.  Alternatively, he seeks a new trial on the grounds (1) that the district court erred in refusing to sever his trial from Gonzalez' trial, and (2) that the court erred in giving certain limiting instructions to the jury.

[7]     Whether the district court misinterpreted the Sentencing Guidelines is a question of law.  Accordingly, we review the district court's interpretation of the guidelines in this case de novo.

Perulena joined the conspiracy. The probation office reasoned that Perulena could be held accountable for these amounts because "the substantive count[s] III and IV were part of the same course of conduct and common scheme charged in the conspiracy, count I, the base offense level includes the total amount of marijuana involved in the conspiracy, pursuant to Section 1B1.3(a)(2)."[8] The PSR, therefore, recommended sentences based on attribution to Perulena of 14,969 kilograms of marijuana, which, it concluded, resulted in a base offense level of 36.

At the sentencing hearing, Perulena objected to the PSR's recommendation that he be held accountable for the marijuana that the Romeu organization imported into the United States in June of 1988, prior to his involvement in the conspiracy. Perulena's counsel noted that the Government had never proven -- or even attempted to prove -- that Perulena was involved in the June 1988 shipment, and argued that the 11,794 kilograms of marijuana imported by the Romeu organization on that date therefore should not be included in calculating his offense level.

In response to Perulena's argument, the Government asserted that Perulena was, in fact, a major figure in the drug importation and distribution business, not merely a participant in one transaction with Romeu's organization. To bolster this assertion, the Government offered the testimony of Randy Willich of the Florida Marine Patrol, who testified that he had been monitoring Perulena's activities since the early 1980s. According to Willich, Perulena was heavily involved in the importation of illegal drugs into the United States, arranging at various times for the importation of shipments of both cocaine and marijuana. He testified that Perulena and Romeu worked together on occasion, when it was convenient, but that Perulena was

---

[8] The court's probation office erred in including a conviction on Count III in calculating Perulena's base offense level, because Perulena was not named as a defendant in that count. The error, however, is of no moment given our disposition of Perulena's appeal.

essentially equal in stature to Romeu in the drug importation business.  Notwithstanding that Willich's testimony suggested the existence of a number of separate conspiracies rather than a single conspiracy in which both Perulena and Romeu were involved, his only testimony even remotely suggesting that Perulena was involved with the June 1988 shipment was his claim that one person involved in that shipment, Tomas Cabrera, worked on occasion for Perulena.  Willich then testified, however, that Cabrera worked for "anybody," including Romeu, and he did not assert that Cabrera was working for Perulena in connection with the June 1988 shipment.

The district court nevertheless overruled Perulena's objection to the inclusion of the June 1988 shipment in the calculation of his base offense level, concluding that one who has been found guilty of participating in a drug smuggling conspiracy is accountable for all of the drugs imported during the life of the conspiracy as a matter of law.  The court stated:

> It seems to me that when one willfully becomes a member of that type of organization, that one therefore becomes responsible for the activities of the organization, not only the activities that occurred after the joining, the willful joining of the conspiracy, but those that may have taken place before, provided one willfully joins what he or she knows to be an organization dedicated to the importation of multi-ton quantities of marijuana and cocaine into the United States.

The court thus adopted the PSR's recommendation that Perulena be held accountable for the approximately 14,969 kilograms of marijuana imported into the United States in June of 1988 and May of 1989, and sentenced Perulena at the low end of the guideline sentence range.[9]

---

[9]  The district court also imposed, under U.S.S.G. § 3B1.1(a) (1991), a four-level enhancement to Perulena's base offense level because it found that he was an "organizer or leader" of the May 1989 shipment, thus giving Perulena a final base offense level of 40. Perulena argues in his brief that he was, at worst, a supervisor, and thus deserved only a three-level enhancement in accordance with U.S.S.G. § 3B1.1(b).  We find this contention meritless.

6

Perulena now contends that the district court erred in holding him accountable for the June 1988 importation because, under his reading of the sentencing guidelines, he could not be held accountable for the drugs smuggled by the Romeu organization before he joined it. Section 1B1.3(a)(2) of the 1991 Sentencing Guidelines, which the probation office and the district court relied upon in deciding the quantity of marijuana for which Perulena should be held accountable, required that the court, in determining the base offense level in a case such as Perulena's, take into account the following:

> solely with respect to offenses of a character for which [U.S.S.G.] § 3D1.2 (d) would require grouping of multiple counts, <u>all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction</u>[.]

U.S.S.G. § 1B1.3(a)(2) (1991) (emphasis added).[10] Standing alone, this provision would seem to dispose of Perulena's argument and support the court's conclusion that Perulena was responsible for the past acts of the Romeu conspiracy. Application Note 2, however, explains that the phrase "'[s]uch acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction,' as used in subsection (a)(2), refers to <u>acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable</u>." U.S.S.G. § 1B1.3, comment. (n.2) (1991) (emphasis added). No evidence was presented by the Government that suggested that Perulena committed or aided and abetted the July 1988 offense, leaving only the question of whether the July 1988 shipment was an act or omission "for which the defendant would be otherwise accountable."

_____

[10] The district court applied the 1991 version of the Guidelines, which were in effect at the time of Perulena's sentencing on May 19, 1992. <u>See</u> United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 1, 1991).

7

The language in Application Note 2 tracks the language in the subsection that precedes

(a)(2) -- subsection (a)(1). Subsection (a)(1) provides that, in determining Perulena's base

offense level, the district court was required to take into account the following:

> all <u>acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable</u>, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense[.]

U.S.S.G. § 1B1.3(a)(1) (1991) (emphasis added). Finally, in Application Note 1, the Guidelines

Manual explains that

> [c]onduct "<u>for which the defendant would be otherwise accountable</u>," as used in subsection (a) (1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused. (<u>Cf</u>. 18 U.S.C. § 2.) In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. <u>Because a count may</u> be broadly worded and <u>include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant</u>. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.

U.S.S.G. § 1B1.3, comment. (n.1) (1991) (emphasis added). Application Note 1 also includes

illustrations of conduct for which the defendant should be held accountable. Illustration (e)

describes one particularly relevant situation:

> Defendants H and I are engaged in an ongoing marihuana importation conspiracy in which Defendant J was hired only to help off-load a single shipment. Defendants H, I, and J are included in a single count charging conspiracy to import marihuana. For the purposes of determining the offense level under this guideline, Defendant J is accountable for the entire single shipment of marihuana he conspired to help import and any acts or omissions in furtherance of the

8

importation that were reasonably foreseeable.  He is not accountable for prior or subsequent shipments of marihuana imported by Defendants H or I if those acts were beyond the scope of, and not reasonably foreseeable in connection with, the criminal activity he agreed to jointly undertake with Defendants H and I (i.e., the importation of the single shipment of marihuana).

U.S.S.G. § 1B1.3, comment. (n.1, illus. e) (1991).

Reading these application notes and the above illustration as a whole, we conclude that Perulena could not be held accountable for the June 1988 importation.  That importation is not conduct for which Perulena may be "otherwise accountable," because it occurred almost a year before he joined the Romeu conspiracy for the May 1989 shipment.  In the words of illustration (e) above, that importation was "beyond the scope of . . . the criminal activity he agreed to jointly undertake with" Romeu and his accomplices.[11]  We therefore vacate Perulena's sentences

---

[11]    The 1992 amendment to U.S.S.G. § 1B1.3 and its accompanying application notes significantly clarified the conduct that could be considered when sentencing a participant in a criminal conspiracy.  See U.S.S.G. App. C, amend. 439 (1997) (effective Nov. 1, 1992).  Instead of requiring the reader of the guideline section to proceed from subsection (a)(2) to Application Note 2, then back to subsection (a)(1), and finally to Application Note 1 and its accompanying illustrations -- all in order to discover the meaning of "such acts and omissions" as it appeared in subsection (a)(2) -- the new subsection (a)(2) specifically references amended subsection (a)(1) for determining the acts for which a participant in a conspiracy may be held accountable.  Subsections 1B1.3(a)(1) and (2) now state that the district court shall determine the defendant's base offense level based on the following:

(1)    (a)    all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

       (b)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)    solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]

U.S.S.G. § 1B1.3(a)(1) - (2) (1997) (emphasis added).  The amended application notes clarify the fact that subsections (a)(1) and (a)(2) should be read in concert.  Application Note 1 now states, in part, that "[u]nder subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range."  U.S.S.G. § 1B1.3, comment. (n.1) (1997).  The amended Application Note 2 mirrors parts of old Application Note 1, stating in pertinent part:

> Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant.  In order to determine the defendant's accountability for the conduct of others under [U.S.S.G. §] (a) (1) (B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).   The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision.  The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.

U.S.S.G. § 1B1.3, comment. (n.2) (1997) (emphasis added).
        Amended Application Note 2 also incorporates essentially verbatim the text of illustration (e) of Application Note 1, quoted in the text supra, that was in effect at the time of Perulena's sentencing, with the exception of the last sentence of the illustration.  The new illustration reads, in pertinent part:

> Defendants H and I engaged in an ongoing marihuana importation conspiracy in which Defendant J was hired only to help off-load a single shipment.  Defendants H, I, and J are included in a single count charging conspiracy to import marihuana.  Defendant J is accountable for the entire single shipment of marihuana he helped import . . . and any acts and omissions in furtherance of the importation of that shipment that were reasonably foreseeable. . . .  He is not accountable for prior or subsequent shipments of marihuana imported by Defendants H or I because those acts were not in furtherance of his jointly

10

and remand the case for further proceedings.  On remand, the district court shall resentence

Perulena on the record that was before the court when it sentenced him in the first instance.

---

> undertaken criminal activity (the importation of the single shipment of
> marihuana).

U.S.S.G. § 1B1.3, comment. (n.2, illus. (c)(3)) (1997) (emphasis added).  Applied to the facts in
the instant case, the last sentence of the amended illustration supports Perulena's position four
square: the 11,794 kilograms imported into the United States in May 1988 should not have been
used to calculate Perulena's base offense level.

In addition, the commentary to section 1B1.3 was amended again in 1994, and the 1994
amendment to Application Note 2 lends even more support to our interpretation of the acts for
which a participant in a conspiracy may be held accountable.  Application Note 2 now provides:

> A defendant's relevant conduct does not include the conduct of members of a
> conspiracy prior to the defendant joining the conspiracy, even if the defendant
> knows of that conduct (e.g., in the case of a defendant who joins an ongoing drug
> distribution conspiracy knowing that it had been selling two kilograms of cocaine
> per week, the cocaine sold prior to the defendant joining the conspiracy is not
> included as relevant conduct in determining the defendant's offense level).  The
> Commission does not foreclose the possibility that there may be some unusual set
> of circumstances in which the exclusion of such conduct may not adequately
> reflect the defendant's culpability; in such a case, an upward departure may be
> warranted.

U.S.S.G. App. C, amend. 503 (1997) (effective Nov. 1, 1994) (emphasis added).

We finally note that both the 1992 and 1994 amendments to section 1B1.3 were
described by the Sentencing Commission as clarifying amendments, see U.S.S.G. App. C,
amends. 439, 503, and the amendments are certainly clarifying in effect.  See United States v.
Word, 129 F.3d 1209, 1213 (11th Cir. 1997) (quoting language from amendment 503 and stating
that it is clarifying and applies retroactively); United States v. Lambert, 995 F.2d 1006, 1009 n.3
(10th Cir. 1993) (applying amendment 439 retroactively because it is clarifying); United States v.
Evbuomwan, 992 F.2d 70, 73-74 & n.1 (5th Cir. 1993) (considering language amended by
amendment 439 because amendment only clarified guideline and commentary).  This circuit
applies clarifying amendments retroactively.  See United States v. Scroggins, 880 F.2d 1204,
1215 (11th Cir. 1989) (stating that amendments that "do not effect a substantive change, but
rather are intended only to clarify the rule adopted by a particular guideline . . . constitute
strongly persuasive evidence of how the Sentencing Commission originally envisioned that the
courts would apply the affected guideline," and therefore apply retroactively).  Under any
reading of section 1B1.3, therefore, the district court erroneously computed Perulena's base
offense level.

II.

For the reasons stated above, we vacate Perulena's sentences and remand his case to the district court for further proceedings not inconsistent with this opinion.

VACATED and REMANDED, with instructions.