[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14574
Non-Argument Calendar

_____

D.C. Docket No. 2:19-cr-00511-RDP-SGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KELON RAEMON BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 30, 2021)

Before WILSON, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Kelon Brown appeals his conviction and sentence after pleading guilty to possessing a machine gun, in violation of 18 U.S.C. § 922(o). He argues that the district court erred in denying his motion to suppress evidence obtained from a search of the car. He further argues that the district court erred in applying a two-level enhancement to his base offense level under U.S.S.G. § 2K2.1(b)(4)(A) because his possession of a stolen gun was not felonious under Alabama law at the time of the offense.[1] The government contends that Brown waived any challenge to the denial of his motion to suppress by entering an unconditional guilty plea and that his challenge to the enhancement is foreclosed by the plain language of the guidelines. After review, we agree with the government that Brown's challenge to the motion to suppress ruling was waived by his guilty plea and that his guidelines challenge is without merit.

## I.    Background

We start with a recitation of the relevant facts. On November 20, 2018, at approximately 1:45 p.m., the Deputy Chief of Police for the Fairfield Police Department responded to a reported shooting near Willie Mays Park in Fairfield, Alabama. The officer began interviewing witnesses who told him that they observed the occupants of a white Dodge Charger and a gray Chevy Malibu

---

[1] Although Brown's predicate charge was unlawful possession of a machine gun, the district court applied the sentencing enhancement for his simultaneous possession of a rifle that had been reported stolen from a gun store in Tuscaloosa, Alabama.

2

exchange gunfire. About a minute or two into the interview, the officer then saw what he perceived to be a gray Chevy Malibu[2] pass the officer's location, with what he believed to be bullet holes in the rear bumper and rear passenger area. The officer radioed an instruction to all other officers in the area to stop the vehicle. Shortly thereafter, another officer pulled over the Chevy Malibu.

By the time the first officer arrived at the scene, the officer who initiated the traffic stop had ordered Brown out of his vehicle and instructed him not to move and to show his hands. Instead of complying, Brown began to retreat, despite the officers' continued instructions for him to remain still. An officer followed Brown and attempted to grab him, but Brown broke free and began to flee in earnest, running down the street into an open field. With the officer pursuing him on foot, Brown fled in the direction of a creek bed, where he eventually ran into other responding officers, at which point Brown gave himself up. The officers arrested Brown for attempting to elude the police.

The officers towed the Chevy Malibu.[3] While inventorying the vehicle, the officer discovered a machine gun underneath the driver's seat, a rifle underneath

---

[2] Testimony at the suppression hearing established that the color of the car was "champagne brown." Nevertheless, the district court remarked that pictures of the vehicle "look[ed] gray or silver to me, not brown." Defense counsel responded "[i]t does. But in person, the car is visibly champagne."

[3] The Fairfield Police Department policy provides that "[a]ll vehicles in possession of an arrestee shall be towed unless the owner approves its release to another person at the scene."

the front passenger's seat, and ammunition.  Thereafter, a federal grand jury indicted Brown on one count of knowingly possessing a machine gun, in violation of 18 U.S.C. § 922(o), and one count of knowingly possessing an automatic firearm not registered to him, in violation of 26 U.S.C. § 5861(d).

Brown filed a motion to suppress the evidence obtained from the search of the Chevy Malibu, arguing that the officers violated his Fourth Amendment rights by unreasonably seizing and searching the car without a warrant or probable cause. Following an evidentiary hearing, the district court denied the motion.

On July 15, 2020, Brown appeared before the court to enter a plea.  Because it was unclear whether Brown wanted to pursue the plea agreement with the government or proceed with a "blind plea," the district court continued the hearing so that Brown would have additional time to discuss his options with his counsel.

Two weeks later, Brown again appeared before the court and pleaded guilty without a plea agreement to count one of the indictment.  At the change-of-plea hearing, the district court confirmed that Brown had conferred with his attorney, that he was not under the influence or mentally, emotionally, or physically impaired, and that he understood the proceedings.  The court explained to Brown the trial rights he would be giving up by pleading guilty, and Brown indicated that

---

Brown did not own the vehicle.  Rather, records indicated that it was registered to a female, who was not on the scene.

he understood. The district court then confirmed that Brown understood that the government made no agreements or promises in connection with his blind plea, and that he was not coerced into entering his plea. Brown confirmed that he understood, and that he was pleading guilty because he was guilty.

After reviewing the charges, factual basis, and sentencing consequences with Brown, the district court asked whether he understood that: "If you plead guilty today . . . then you would not be able to go back and change your mind after that. . . . [Y]our guilty plea would stick even if you changed your mind after that." Brown answered "yes." Determining that Brown intelligently, knowingly, and voluntarily pled guilty, the district court accepted his plea and found him guilty of count one. At no point during the change-of-plea hearing did anyone mention preserving Brown's right to appeal the ruling on the motion to suppress.

The United States Probation Office prepared a presentence investigation report ("PSI") and recommended a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the rifle found in Brown's car was stolen. The Office calculated Brown's base offense level at 18 in accordance with section 2K2.1 of the Sentencing Guidelines. Brown's resulting guidelines range was 37 to 46 months' imprisonment.

At sentencing, Brown objected to the § 2K2.1(b)(4)(A) enhancement for possession of a stolen firearm under section 2K2.1(b)(4)(A). He argued that the

enhancement applied only if the possession of the firearm in question was a felony under federal or state law, and, under Alabama law at the time of his offense, simple possession of the rifle was a misdemeanor.  Likewise, he contended that, because of his personal characteristics and conduct, he did not run afoul of any federal criminal statute that would make his simple possession of the rifle a felony offense.  Nevertheless, the district court overruled the objection, noting that there was no support "in the guidelines language" for Brown's argument.

Accordingly, the district court adopted the PSI and sentenced Brown to 37 months' imprisonment, the low end of the guidelines range, to be followed by three years' supervised release.[4]  Brown timely appealed.

## II.     Discussion

### A. Brown's Motion to Suppress

Brown argues that the district court erred in denying his motion to suppress. In response, the government asserts that Brown waived this issue when he entered his unconditional blind guilty plea.  For the reasons that follow, we agree with the government.

Whether a defendant's entry of a guilty plea waives an issue that he raises on appeal is a question of law that we review *de novo*.  *United States v. Patti*, 337 F.3d 1317, 1320 n.4 (11th Cir. 2003).  Generally, a voluntary, unconditional guilty

---

[4] The government moved successfully to dismiss count two of the indictment.

plea waives a defendant's appeal of all non-jurisdictional defects in the proceedings, including the district court's ruling on a motion to suppress. *Id.* at 1320.; *see also United States v. Charles*, 757 F.3d 1222, 1227 n.4 (11th Cir. 2014). Thus, a defendant who wishes to preserve review of an adverse pre-plea determination such as a motion to suppress must enter a conditional plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure.[5] *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997). Brown failed to enter a conditional guilty plea. Hence, as long as his plea was knowing and voluntary, he has waived his right to appeal the motion to suppress.[6] *Charles*, 757 F.3d at 1227 n.4.

Rule 11(b) of the Federal Rules of Criminal Procedure "sets out procedures that district courts must follow when accepting guilty pleas" to ensure that a defendant's plea is entered voluntarily and knowingly. *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). Before accepting a guilty plea, the district court "must ensure that the three core concerns of Rule 11 . . . have been met: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and

---

[5] Rule 11(a)(2) provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea."

[6] We note that Brown does not challenge the voluntariness of his plea on appeal. Nevertheless, in order to determine whether the government's assertion that this claim is waived by Brown's plea is correct, we must examine the voluntariness of the plea.

7

understand the consequences of his guilty plea." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1289 (11th Cir. 2003) (quotation omitted). "There is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

We need not reach the merits of Brown's Fourth Amendment challenge to his conviction because he intelligently, knowingly, and voluntarily entered a blind, unconditional plea. Brown's responses to the district court's plea colloquy establish that his plea was knowing and voluntary. Pursuant to Rule 11(b), the district court confirmed that Brown's plea was not the product of coercion and that he knew and understood the nature of the charges against him, and the trial and sentencing consequences of his plea. Further, Brown confirmed that he was pleading guilty because he was in fact guilty, and we presume the truth of that statement. *Medlock*, 12 F.3d at 187. Nothing in the record indicates that Brown entered the guilty plea based on the belief that he still could pursue the motion to suppress issue on appeal.[7]

Accordingly, he waived his right to appeal from the denial of his motion to suppress, and we affirm as to this issue.

---

[7] After Brown raised a concern about the impact of a blind plea on his right to appeal, the district court continued the plea hearing to allow Brown to confer with his counsel. Two weeks later, Brown entered an unconditional blind plea and at no point during the proceeding did he indicate that he desired to appeal the motion to suppress.

8

B.  The U.S.S.G. § 2K2.1(b)(4)(A) Enhancement

Brown argues that the U.S.S.G. § 2K2.1(b)(4)(A) enhancement for possession of a stolen firearm applies only if the possession of the stolen firearm itself would be a felony.  He maintains that, at the time of his offense, possession of the stolen rifle would have been only a misdemeanor under Alabama law, and, therefore, the district court erred in applying this enhancement.

"We review [the] district court's interpretation of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. McVay*, 447 F.3d 1348, 1352–53 (11th Cir. 2006).

When interpreting the Sentencing Guidelines, the plain language controls, and "absent ambiguity, no additional inquiry is necessary." *United States v. Gordillo*, 920 F.3d 1292, 1297 (11th Cir. 2019) (quotation omitted).  "[O]ur interpretation of the Sentencing Guidelines is governed by traditional rules of statutory construction, including the prohibition on rewriting statutes by adding or subtracting words." *United States v. Shannon*, 631 F.3d 1187, 1189 (11th Cir. 2011) (internal citation omitted).  For instance, where a drafter includes particular language in one section of a statute and excludes it in another, courts presume that the exclusion is intentional. *See United States v. Saunders*, 318 F.3d 1257, 1264 (11th Cir. 2003).  The Guidelines commentary is also authoritative unless it

9

violates the Constitution or a federal statute or is inconsistent with the Guidelines themselves. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

Section 2K2.1(b)(4)(A) of the Guidelines provides for a two-level increase in the base offense level "[i]f any firearm . . . was stolen." *See* U.S.S.G. § 2K2.1(b)(4)(A). The enhancement applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen." *Id.*, cmt. (n.8(B)). By contrast, § 2K2.1(b)(6)(B) provides for a four-level increase in the base offense level where a firearm or ammunition is used "in connection with another felony offense." *Id.* § 2K2.1(b)(6)(B).

Nothing in the text of § 2K2.1(b)(4)(A) even hints at a requirement that the possession of the stolen firearm must be felonious in order for the enhancement to apply. Rather, the plain language of the guidelines provides that the enhancement applies if the firearm "was stolen." U.S.S.G. § 2K2.1(b)(4)(A). And, if the Sentencing Commission intended to link the § 2K2.1(b)(4)(A) enhancement to "another felony offense," § 2K2.1(b)(6)(B) demonstrates that the Commission knew how to do so. In short, Brown's contention that the possession of the stolen firearm must constitute an independent felony offense in order for the enhancement to apply is not supported by the plain language of the Guidelines.

Brown also argues that the Guidelines commentary suggests, and the Sixth Circuit has held, that a district court may not impose the two-level enhancement

when a defendant has been convicted for knowingly trafficking stolen firearms under 18 U.S.C. § 922(j).  This is true.  U.S.S.G. § 2K2.1, cmt. (n.8(A)); *United States v. Fugate*, 964 F.3d 580, 582 (6th Cir. 2020).  It is also irrelevant.  Brown was not indicted under 18 U.S.C. § 922(j).  Rather, Brown pled guilty to, and the district court convicted him of, one count of knowingly possessing a machine gun, in violation of 18 U.S.C. § 922(o).  As he did below, Brown concedes that the rifle in his possession was, in fact, stolen.  Therefore, the district court did not err by applying the two-level enhancement under § 2K2.1(b)(4)(A).  Accordingly, we affirm his sentence.

**AFFIRMED.**

11