[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12657

_____

D.C. Docket No. 2:12-cv-04139-LSC

In re WALTER LEROY MOODY, JR.

Petitioner.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 12, 2014)

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

We deny the petition for rehearing, but vacate our original opinion in this

case and substitute the following opinion in its place.

Walter Leroy Moody, Jr., convicted under federal and state law for the 1989

murder of Eleventh Circuit Judge Robert S. Vance, has petitioned for a writ of

mandamus ordering the recusal of District Judge L. Scott Coogler, who was

randomly assigned to hear his federal petition for a writ of habeas corpus, *see* 28

U.S.C. § 2254, and directing the transfer of this matter to a district judge outside the bounds of the Eleventh Circuit.    After filing his mandamus petition, Mr. Moody has separately moved for the recusal of all judges on this court, requesting that we likewise transfer his mandamus petition to a different circuit.

At bottom, Mr. Moody argues that Judge Vance's murder, which occurred more than two decades ago, necessitates the recusal of all circuit judges on, and all district and magistrate judges within, the Eleventh Circuit.    According to Mr. Moody, allowing any such judges to rule on his habeas corpus petition would create an appearance of partiality within the meaning of 28 U.S.C. § 455(a), and also violate § 455(b)(4) by allowing them to sit on a case in which they have an "interest that could be substantially affected by the outcome."    Having analyzed the unique facts and circumstances of this matter, and with the benefit of oral argument, we deny Mr. Moody's petition and motion.

## I

In 1972, a federal jury in Georgia convicted Mr. Moody of possessing an unregistered destructive device.    *See United States v. Moody*, 474 F.2d 1346 (5th Cir. 1973) (*Moody I*) (table decision affirming conviction).    After his attempts to set aside the conviction proved unsuccessful, *see, e.g.*, *Moody v. United States*, 874 F.2d 1575 (11th Cir. 1989) (*Moody II*) (affirming denial of coram nobis relief), Mr. Moody mailed a tear-gas package bomb to the NAACP Regional Office in

2

Atlanta.    That bomb exploded on August 21, 1989, "engulf[ing] NAACP employees in clouds of choking gas." *United States v. Moody*, 977 F.2d 1425, 1428 (11th Cir. 1992) (*Moody V*).  Mr. Moody also sent out a "Declaration of War" to the Eleventh Circuit and to television stations around the country, accusing the Circuit of deliberate misconduct and rank bias. *Id.*

As detailed in *Moody V*, 977 F.2d at 1428-29, Mr. Moody then built four powerful package bombs.  He mailed the first of these bombs to Judge Vance in Alabama, with the return address of another Eleventh Circuit judge.  Judge Vance was killed on December 16, 1989, when he opened the package containing the bomb, and his wife was seriously injured by the blast.  The second of the bombs killed civil rights attorney Robert Robinson in Savannah, Georgia, two days later.  A security officer intercepted the third bomb at the Eleventh Circuit headquarters in Atlanta, and the fourth bomb was received but not opened by employees of the Jacksonville NAACP office because they had heard about the other bombings.

In 1990, the government obtained an indictment against Mr. Moody, charging him with numerous federal offenses related to the murders of Judge Vance and Mr. Robinson.  All judges then sitting on the Eleventh Circuit entered an order recusing themselves from all cases "relating to the investigation of the

murder of [Judge] Vance" in which Mr. Moody was a party. *See United States v. Moody*, 977 F.2d 1420, 1423 (11th Cir. 1992) (*Moody IV*).[1]

All district judges in the Northern District of Georgia also recused themselves, and as a result Chief Justice Rehnquist designated Judge Edward Devitt from the District of Minnesota to preside over Mr. Moody's case. Judge Devitt granted Mr. Moody's motion for a change of venue, and moved the trial to St. Paul. *See United States v. Moody*, 762 F. Supp. 1485 (N.D. Ga. 1991) (*Moody III*). After a jury convicted Mr. Moody of 71 counts, Judge Devitt sentenced him to seven life terms and 400 years, to be served concurrently with each other and consecutively to a 15-year sentence imposed in the Middle District of Georgia on separate perjury and obstruction charges related to Mr. Moody's attempts to overturn his 1972 conviction. On appeal, the Eleventh Circuit – with a panel comprised of three judges from the Fourth Circuit – affirmed Mr. Moody's convictions and sentences in *Moody V*.[2]

---

[1] That recusal order is still in effect for all judges who were members of the Eleventh Circuit at that time (i.e., Circuit Judges Tjoflat, Fay, Hill, Anderson, Kravitch, Cox, and Edmondson). In addition, several other current members of the Eleventh Circuit (Chief Judge Carnes and Judges Hull, Marcus, and Pryor) have since voluntarily recused themselves from participation in any of Mr. Moody's cases. At this time, therefore, the only judges in the Eleventh Circuit who have not recused themselves from Mr. Moody's cases are the members of this panel.

[2] After several judges in the Middle District of Georgia recused themselves, Chief Judge Tjoflat designated Judge Anthony Alaimo from the Southern District of Georgia to preside over Mr. Moody's perjury/obstruction of justice case. Mr. Moody appealed his convictions in that case, but the Eleventh Circuit – with the same panel of Fourth Circuit judges who heard *Moody V* – affirmed in *Moody IV*. One of the arguments Mr. Moody raised on appeal in *Moody IV* was

The State of Alabama then charged Mr. Moody with the capital murder of Judge Vance. A jury found Mr. Moody guilty, and the state trial court, following the jury's 11-1 recommendation, sentenced him to death. The Alabama Court of Criminal Appeals affirmed, and the Alabama Supreme Court denied review. *See Moody v. State*, 888 So. 2d 532 (Ala. Crim. App. 2003), *writ denied*, 888 So. 2d 605 (Ala. 2004) (*Moody VI*). When his attempt to obtain post-conviction relief in the Alabama courts failed, *see Moody v. State*, 95 So. 3d 827 (Ala. Crim. App. 2011) (*Moody VII*), Mr. Moody filed a petition for a writ of habeas corpus in the Northern District of Alabama. The petition was randomly assigned to Judge Coogler, who denied Mr. Moody's motion for recusal.

## II

In relevant part, 28 U.S.C. § 455(a) provides that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In keeping with the aim of "'promot[ing] confidence in the judiciary by avoiding even the appearance of impropriety whenever possible,'" *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)),

---

that Judge Alaimo should have recused himself "because of the appearance of bias arising from [Mr.] Moody's (then alleged) involvement in the Vance and Robinson murders." 977 F. 2d at 1423. The panel in *Moody IV* rejected the argument, finding no abuse of discretion in Judge Alaimo's reasoning that "the purported basis for . . . bias was 'simply too attenuated to raise even a reasonable appearance of impropriety.'" *Id.*

5

recusal under § 455(a) turns on "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013) (citations and internal quotation marks omitted).

Under § 455(b)(4), recusal is required whenever a judge has "any . . . interest that could be substantially affected by the outcome of the proceeding." The phrase "any . . . interest that could substantially be affected" is not statutorily defined, and "it is not easy to conclude what [it] means." *In re Virginia Electric & Power Co.*, 539 F.2d 357, 367 (4th Cir. 1976). We have held, however, in a case alleging improper transactions in a customer's airline frequent flyer program, that § 455(b)(4) did not require recusal of Eleventh Circuit judges who happened to belong to the same program. *See Delta Airlines v. Sasser*, 127 F.3d 1296, 1297 (11th Cir. 1997) (explaining in part that the litigation would not "jeopardize the viability" of the frequent flyer program as a whole). *Cf. Liljeberg*, 486 U.S. at 867 (district judge violated § 455(b)(4) by failing to recuse after learning that he was a member of the board of trustees of a university with an interest in the outcome of the proceedings before him).

"[A]ny doubts must be resolved in favor of recusal." *Patti*, 337 F.3d at 1321. Nevertheless, "there is as much obligation for a judge not to recuse when there is

no occasion for him to do so as there is for him to do so when there is." *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (internal punctuation and citation omitted). Indeed, "a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986).

### III

We first address Mr. Moody's motion for recusal of the members of this panel. Mr. Moody argues that recusal of all Eleventh Circuit judges is required because his crimes in 1989 targeted not only Judge Vance, but also the Eleventh Circuit as an institution (as well as all of its then-constituent judges). Mr. Moody notes that the judges of the Eleventh Circuit received threatening letters contemporaneously with Judge Vance's murder, that a bomb was delivered to the Eleventh Circuit's headquarters in Atlanta, that Judge Vance maintained close relationships with a number of circuit colleagues, and that two current Eleventh Circuit judges participated in his prosecution. Such facts, Mr. Moody maintains, would lead a "objective, disinterested, lay observer" to harbor a "significant doubt" about the Eleventh Circuit's ability to decide this matter fairly and therefore necessitate recusal under § 455(a). *See Scrushy*, 721 F.3d 1303 (internal quotation marks omitted).

7

**A**

Recusal decisions under "§ 455(a) are extremely fact driven and 'must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'" *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (quoting *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995)).  Given the peculiar scenario here, the facts that Mr. Moody relies on do not warrant recusal under § 455(a).  First, none of the three judges on this panel sat on the Eleventh Circuit (or were members of the federal judiciary) at the time of Judge Vance's death or of the contemporaneous bomb threat to the Eleventh Circuit's headquarters.[3]  Second, although Judges Wilson and Jordan served as law clerks to Fifth Circuit and Eleventh Circuit judges respectively, they did so before Judge Vance's murder (Judge Wilson in 1980 and Judge Jordan in 1987-88).  Third, no judge on this panel enjoyed a close personal or professional relationship with Judge Vance or with any member of his immediate family.  Fourth, even though two current Eleventh Circuit judges took part in Alabama's prosecution of Mr. Moody, those two judges have recused, so their participation is not an issue.  In short, the only connection between the members of this panel and Mr. Moody's

---

[3] Judge Wilson began his service on the Eleventh Circuit in 1999.  Judge Martin and Judge Jordan followed more than a decade later, in 2010 and 2012 respectively.

current case is our current service on the Eleventh Circuit and Judge Vance's service on the same court at the time of his death in 1989. And that is not enough.

Mr. Moody relies heavily on the Seventh Circuit's sua sponte self-recusal in *In re Nettles*, 394 F.3d 1001 (7th Cir. 2005), but we think that case does not control here. The petitioner in *Nettles* was arrested in 2004 after he allegedly sold explosives to an undercover FBI agent posing as a terrorist, with the aim of destroying the Dirksen Courthouse in downtown Chicago, a building which houses the District Court for the Northern District of Illinois and is the headquarters of the Court of Appeals for the Seventh Circuit. *Id.* at 1002-03. Concluding that a reasonable observer might believe that a district judge stationed in the Dirksen Courthouse would want the petitioner to be convicted and serve a lengthy sentence, the Seventh Circuit granted the petitioner mandamus relief and ordered the recusal of all district judges in the Northern District of Illinois. *Id*. at 1003. Taking that logic one step further, the Seventh Circuit sua sponte recused itself from hearing any further appeals in the petitioner's case, reasoning that "the appellate judges in [the Dirksen] [C]ourthouse are as menaced by an Oklahoma City style attack as the district judges." *Id.*

The Ninth Circuit distinguished *Nettles* in *Clemens v. U.S. District Court for the Central District of California*, 428 F.3d 1175, 1179-80 (9th Cir. 2005). In *Clemens*, the defendant was charged with making threats (with intent to extort,

assault, murder, or inflict harm) against three district judges who had handled his *pro se* cases in the Central District of California.  He filed a mandamus petition asking for the disqualification of all judges in the Central District from his criminal case.  The Ninth Circuit denied relief under § 455(a), explaining that "[w]here other circuits have required recusal, the recused judge was an intended victim of the alleged crime.  In *Nettles*, all the judges of the district could have fairly been viewed as intended victims of the charged offense.  There is no such allegation in this case, either toward the assigned judge or the entire bench.  Nor could a reasonable person draw an inference of a threat against the entire bench."  *Id.* at 1179.  The Ninth Circuit rejected the defendant's argument that, given the type of crime charged, no judge in the Central District could be properly assigned to his criminal case: "Clemens argues that no judge of the district could preside impartially over his trial, given the nature of the allegations.  However, we have previously rejected an attempt to disqualify a judge based on his relationship with the victim."  *Id.* at 1180.

As we read it, *Nettles* stands for the proposition that, where a defendant is charged with trying to blow up (or otherwise damage) a federal courthouse, judges residing in that courthouse at the time of the alleged plot and judges belonging to the court based in that courthouse must recuse from cases involving that defendant because such judges were potential victims of the alleged attack.  *See also Nichols*,

71 F.3d at 352 (granting mandamus relief and ordering recusal of district judge whose courthouse and chambers were damaged by bomb allegedly set off by defendants at nearby federal building).[4]   Here, consistent with the rationale of *Nettles*, those judges sitting on the Eleventh Circuit at the time of Judge Vance's murder have recused themselves from hearing all cases relating to that murder in which Mr. Moody is a party.  *See Moody IV*, 977 F.2d at 1423.  So have all other Eleventh Circuit judges, save for the members of this panel, as explained in footnote 2.

The narrow question then, is whether, 24 years after Judge Vance's murder, recusal is required for current Eleventh Circuit judges who had no personal connection or relationship with Judge Vance and who were not members of the Circuit at the time.  The answer, we think, is no.  The only fact distinguishing this panel from a randomly-assigned panel comprised of judges from another circuit is that we happen to be assigned to the Eleventh Circuit, on which Judge Vance sat at the time of his death in 1989.  We conclude that under the unique facts of this case such a tenuous connection would not, standing alone, raise significant doubt in the

---

[4] We note that the Fifth Circuit adopted a different reading of § 455(a) in *United States v. Harrelson*, 754 F.2d 1153 (5th Cir. 1985).  There, it held that a district judge was not required to recuse himself from the trial arising from the murder of another judge sitting on the same district court, even though the district judge served as an honorary pallbearer and gave a eulogy at his slain colleague's funeral.  See id. at 1164-65 (noting that the district judges had known and worked with one another "for eight or nine years" and enjoyed a "collegial" relationship).

mind of an informed, objective, and disinterested lay observer about our ability to fairly decide cases involving Mr. Moody. *See Clemens*, 428 F.3d at 1179-80.

To the extent that our hypothetical lay observer might have a possible doubt about the ability of any federal judge to fairly adjudicate the habeas corpus petition of a defendant convicted of murdering another federal judge, such a doubt would be based on the notion that federal judges might tend to view an attack on one as an attack on all. But such a doubt would extend to all federal judges – regardless of their circuit or district – and would, if disqualifying, prevent Mr. Moody from having a federal forum in which to obtain review of his state capital conviction and sentence. *Cf. Bolin v. Story*, 225 F.3d 1234, 1238 (11th Cir. 2000) ("Under [the] 'rule of necessity,' a judge is not disqualified due to a personal interest if there is no other judge available to hear the case.").

## B

Mr. Moody also contends that all judges currently sitting on the Eleventh Circuit are part of the "victim class" for the crimes of which he was convicted, and must recuse themselves because they have an "interest that could be substantially affected by the outcome of the proceeding" within the meaning of § 455(b)(4). We disagree.

As we have noted, there is little precedent on the meaning of the phrase "any . . . interest that could be substantially affected by the outcome." One

12

commentator, however, has suggested that the word "substantial" in that phrase "should probably be read to depend on the interaction of two variables: the remoteness of the interest and its extent or degree."  Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 HARV. L. REV. 736, 753 (1973) (cited with approval in *In re Virginia Electric & Power Co.*, 539 F.2d at 368). That formulation makes sense to us, and we therefore use it in our analysis.  *See* 13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3547 (3d ed. 2008) ("[T]he courts appear to weigh two factors in deciding whether to recuse under [§ 455(b)(4)]: the remoteness of the interest and its extent or degree.").

As previously discussed, none of the members of this panel had a close professional or personal relationship with Judge Vance or his family, sat on the Eleventh Circuit in 1989, or were members of the federal judiciary at that time. Our interest, if there is one, is remote and weak, such that it is not disqualifying, and will not, in any event, be substantially affected by the outcome of Mr. Moody's habeas corpus proceeding.  We cannot conclude that we became prospective members of the so-called "victim class" upon our confirmation to the Eleventh Circuit 10, 21, and 23 years after Judge Vance's death, and we are not aware of any authority suggesting that the murder of a judge requires the recusal of all future judges on the victim's court for time immemorial.

## IV

Having determined that we need not recuse ourselves from this matter, we now turn to Mr. Moody's mandamus petition. We conclude that Mr. Moody is not entitled to the recusal of Judge Coogler.

We ordinarily review a district judge's decision not to recuse for abuse of discretion. *See Scrushy*, 721 F.3d at 1303. Because Mr. Moody has petitioned for mandamus, however, our review of Judge Coogler's failure to recuse is even more stringent. The Supreme Court has instructed that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations" and "only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34-35 (1980). *See also In re Lopez-Lukis*, 113 F.3d 1187, 1187-88 (11th Cir. 1997) ("[M]andamus is an extraordinary remedy, which is available only to correct a clear abuse of discretion or usurpation of judicial power. The petitioners have the burden of showing that their right to issuance of the writ [requiring recusal] is 'clear and indisputable.'") (citations omitted). Indeed, "a party is not entitled to mandamus merely because it shows evidence that, on appeal, would warrant reversal of the district court." *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir. 2003).

Mr. Moody raises many of the same arguments with respect to Judge Coogler's recusal as he does with respect to our own recusal. He asserts that because Judge Coogler serves on a district court in Alabama, within the Eleventh Circuit, recusal is mandated under § 455(a), as an informed objective, disinterested, lay observer would entertain a significant doubt about his impartiality. He also contends that, because of his status as a district judge within this Circuit, Judge Coogler has an interest that could be substantially affected by the outcome under § 455(b)(4).

As we see it, Judge Coogler properly exercised his discretion in declining to recuse himself for substantially the same reasons discussed earlier. Judge Coogler, like the members of this panel, occupied no federal judicial position at the time of Judge Vance's death, has had no close connection to Judge Vance or his relatives, and took no part in the underlying investigation and prosecution of Mr. Moody. Judge Coogler, furthermore, was never personally subjected to the threats that were sent to Eleventh Circuit judges sitting at the time Judge Vance was murdered. *See United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (recusal of district judge was not warranted in light of threat that "did not specify a particular judge"); *Moody IV*, 977 F.2d at 1423 (holding that district judge in Georgia did not have to recuse from Mr. Moody's perjury/obstruction of justice case because of Mr. Moody's alleged involvement in the murder of Judge Vance and Mr.

15

Robinson).    And to the extent that Judge Coogler could be characterized as belonging to a prospective "victim class" of district judges in this case, the same characterization would apply to all federal district judges nationwide.[5]

Mr. Moody also argues that we should order Judge Coogler to recuse because he teaches as an adjunct professor at the University of Alabama School of Law, which in turn maintains a professorship named in Judge Vance's honor, and because of some perceived connection between Judge Coogler and the Robert S. Vance Federal Building and United States Courthouse in Birmingham, Alabama. But the mere fact that Judge Coogler teaches at a university that has chosen to memorialize Judge Vance does not mandate recusal.  *See Wu v. Thomas*, 996 F.2d 271, 275 (11th Cir. 1993) (holding that "no reasonable observer would assume that [the district judge] had extra-judicial knowledge of this case or otherwise question [his] impartiality" because the district judge merely served as adjunct professor (without a salary) at, and donated to, the defendant university).   Nor does the presence of a federal building and courthouse named for Judge Vance in Birmingham entitle Mr. Moody to a writ of mandamus.    As Judge Coogler explained, he is not stationed in Birmingham, and does not hold court there.

---

[5] At oral argument, Mr. Moody's counsel was unable to articulate a concrete, workable standard for determining which district judges would be able to hear Mr. Moody's case if we were to grant his mandamus petition.  For example, one would think that a district judge from another circuit whose family members were killed by a disgruntled *pro se* litigant might not be the appropriate person to rule on Mr. Moody's habeas corpus petition, but at oral argument Mr. Moody's counsel was equivocal about such a scenario.

**V**

We recognize the systemic and case-specific importance of recusal in our judicial system and the grave consequences that may result from an erroneous failure to recuse.  But given the unique circumstances of this case, including the many years that have passed since Judge Vance's death, we conclude that we are not required to recuse as a panel under 28 U.S.C. §§ 455(a) & 455(b)(4), and that Mr. Moody is not entitled to a writ mandamus requiring the recusal of Judge Coogler.  We take Judge Coogler at his word that he will be able to rule on Mr. Moody's habeas corpus petition fairly and impartially, and have no doubt that he will take appropriate action should he decide otherwise in the future.

**MOTION FOR RECUSAL OF PANEL DENIED; MANDAMUS PETITION DENIED.**