**HPC US FUND 1, L.P.,
et al., Plaintiffs,**

v.

**Dale WOOD, et al., Defendants.**

**Case No. 13–61825–Civ–Hopkins**

United States District Court,
S.D. Florida.

Signed April 21, 2016

B. George Walker, Weinstein Tippetts & Little LLP, Houston, TX, Megan Laing Janes, Richard Laurence Petrovich, Paul Octavio Lopez, Tripp Scott, PA., Fort Lauderdale, FL, Salvatore Hazard Fasulo, Shubin & Bass, P.A., Miami, FL, for Plaintiffs.

Dale Wood, Fort Lauderdale, FL, pro se.

Joseph Peter Klock, Jr., Epstein Becker & Green, William Joseph Brown, Miami, FL, Juancarlos Antorcha, Miguel Angel Morel, Rasco Klock Perez Nieto, P.L., Coral Gables, FL, Sean Michael Clayton, Eliot J. Lupkin, Associates, P.A., Eliot Jay

Lupkin, Fort Lauderdale, FL, for Defendants.

## AMENDED ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY MAGISTRATE JUDGE JAMES M. HOPKINS (DE 611)

JAMES M. HOPKINS, UNITED STATES MAGISTRATE JUDGE

**THIS CAUSE** is before this Court upon the parties' consent to magistrate judge jurisdiction (DE 423). The Court has before it the De Los Reyes Defendants' Motion to Disqualify Magistrate Judge James M. Hopkins (DE 611), Plaintiffs' Response in Opposition (DE 613), and Defendants' Reply (DE 614). This Motion is ripe for the Court's review. For the reasons that follow, Defendants' Motion to Disqualify (DE 611) is **DENIED**.

### BACKGROUND

Plaintiffs, HPC U.S. FUND 1, L.P. and HPC U.S. FUND 2, L.P., allege violations of the Federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968, and Florida RICO Act, Fla. Stat. §§ 895.01–.06, in addition to various other claims including fraud and conversion (DE 136). Plaintiffs claim Defendant Dale Wood made unauthorized transfers of Plaintiffs' real estate and mortgage interests to other Defendants and third parties while fraudulently concealing those transfers from Plaintiffs. Plaintiffs are two New York limited partnerships that exist for the purpose of investing in the United States real estate and mortgage market for the benefit of approximately 1,800 German investors.

Among those Defendants to which Plaintiffs claim Defendant Wood made unauthorized transfers are the Defendants which compromise the De Los Reyes Group: Gabriel De Los Reyes;[1] De Los Reyes Properties, LLC; Rite Timing Services Corp.; Atlantic City Properties, LLC; and Tribeca 56 Walker, LLC.[2] Plaintiffs claim that Defendant Wood transferred a parcel of property, known as the Secret Lake Property, and a mortgage interest on a property known as Commodore Plaza to certain De Los Reyes Group Defendants ("DLR Defendants") for no or inadequate consideration and that the DLR Defendants knew or should have known that Wood either didn't have the authority or exceeded his authority in doing so.

The Court granted the DLR Defendants' Motion to bifurcate the case, with the claims against Defendants Dale Wood and Gunter Gies to be tried by jury and the claims against the DLR Defendants to be tried by bench trial (DE 461). The jury trial was held in February of 2016, resulting in a verdict on all counts in favor of Plaintiffs (DE 601). During the jury trial, Joseph Klock, an attorney with the law firm Rasco Klock Perez Nieto, P.L. ("the RKPN firm")—the firm representing the DLR Defendants—testified as a witness for Defendant Wood (DE 597). Based upon information presented during the jury trial proceedings, the Court identified a poten-

---

1. Gabriel de los Reyes passed away on March 2, 2014 (DE 214). By Order dated May 20, 2014, the Court granted an agreed motion to substitute Gabriela Rodino, Gabriel's daughter, as the legal representative of the De los Reyes Group (DE 280).

2. During the proceedings on February 18, 2016, the parties represented that only De Los Reyes Properties, LLC and Rite Timing Services Corp remain (DE 604 at 12). However, it appears that there are pending counts which remain against the other three DLR Defendants: Gabriel De Los Reyes—Count 9 Temporary and Permanent Injunctive Relief (DE 136 at 67); Atlantic City Properties, LLC—Count 7 Constructive Trust and Count 9 Temporary and Permanent Injunctive Relief (DE 136 at 64; 67); and Tribeca 56 Walker, LLC—Count 7 Constructive Trust and Count 9 Temporary and Permanent Injunctive Relief (DE 136 at 64; 67).

tial conflict of interest between the DLR Defendants and their counsel, the RKPN firm. At the start of the bench trial, the Court inquired whether this potential conflict of interest had been identified and discussed with the DLR Defendants (DE 604 at 4). Defense counsel didn't know whether potential conflicts were discussed but was unaware of any waiver (DE 604 at 4). After further discussion, the representative for the DLR Defendants, Gabriela Rodino, indicated she wished to seek outside counsel on the issue (DE 604 at 13–14). The Court has since been notified that the DLR Defendants will be obtaining substitute counsel (DE 610).

Before the Court is Defendants' Motion to Disqualify Magistrate Judge James M. Hopkins (DE 611), which asserts the undersigned made statements that reveal a high degree of favoritism and antagonism which would cause a lay observer to entertain significant doubt about his impartiality, requiring disqualification pursuant to 28 U.S.C. § 455(a) (DE 611 at 13–14).

## DISCUSSION

 A magistrate judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The standard for recusal under § 455(a) is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Smith v. Phillips Winters Apartments*, 599 Fed.Appx. 365, 366 (11th Cir.), *cert. denied*, ── U.S. ──, 136 S.Ct. 177, 193 L.Ed.2d 142 (2015) (internal quotations omitted). "Under th[is] statute[ ], judges are presumed to be impartial and the movant bears the burden of demonstrating an objectively reasonable basis for questioning the judge's impartiality." *Infolink Commc'n Services, Inc. v. Dillworth*, 11–21744–MC, 2011 WL 2580397, at *2 (S.D.Fla. June 28, 2011).

 Defendants take issue with statements made by the Court when it raised the matter of a potential conflict of interest between the DLR Defendants and their counsel.[3] Defendants argue that disqualification is required because the Court "singled out" Mr. Klock as having potential liability in connection with the transactions at issue and "displayed favoritism toward Plaintiffs" by "encourag[ing] them to explore a civil or criminal claim against Mr. Klock"[4] (DE 611 at 14).

 "[T]he [C]ourt must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir.1994) (discussing court's role in evaluating waiver of

---

**3.** Defendants additionally appear troubled by the Court's limitation of Joseph Klock's testimony during the jury trial (DE 611 at 7). However, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration" do not establish bias or partiality necessitating recusal. *Liteky v. United States*, 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). *See also Blizard v. Frechette*, 601 F.2d 1217, 1221–22 (1st Cir.1979) (affirming denial of motion to recuse where judge limited testimony, noting "[t]he judge initially allowed appellant to ramble in her testimony and to answer the unasked. It soon became clear, however, that appellant had confused her role as a witness with her attorney's role as an advocate.").

**4.** Defendants' assertion that the Court "suggested to Plaintiffs in open court that they explore filing a civil or criminal action against Mr. Klock" (DE 611 at 13) is a misrepresentation of the record, which reflects that the Court inquired about any potential liability in evaluating the potential conflict of interest, but never suggested that Plaintiffs take *any* action regarding this information (DE 604).

conflict of interest in criminal trial). When the Court becomes aware of a potential conflict of interest, it may raise the issue *sua sponte*. *See* Fla. Bar Code Prof. Resp. D.R. 4–1.7 cmt. (2016)[5] ("Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility."); *Lamson & Sessions Co. v. Mundinger*, No. 4:08CV1226, 2009 WL 1183217, at *3 (N.D.Ohio May 1, 2009) ("Indeed, the Court need not wait for one of the parties to raise the conflict or move to disqualify. In cases where counsel is in violation of professional ethics, the court may act sua sponte to disqualify.") (internal quotations omitted).

Testimony during the jury trial illuminated a potential conflict between the interests of Mr. Klock and the RKPN firm and the interests of their clients, the DLR Defendants. At the same time Mr. Klock was conducting due diligence on behalf of Mr. De Los Reyes regarding the potential acquisition of the HPC Fund, Plaintiffs' management company, Defendant Dale Wood transferred four HPC properties to Mr. De Los Reyes (DE 604 at 5; DE 597 at 14). Plaintiffs allege that despite Mr. Klock and Mr. De Los Reyes working with Plaintiffs' representatives regarding the potential acquisition of the management company, they failed to disclose these transfers to Plaintiffs (DE 604 at 7).

Further, despite a temporary restraining order entered by the Court on August 23, 2013, which enjoined all the Defendants from taking certain actions in relation to Plaintiffs' property interests, a Corrective Quit Claim Deed was executed on the Secret Lake Property that very day, potentially in violation of the Court's Order (DE 8; DE 597 at 27). Notwithstanding the fact that Mr. Klock represented Mr. De Los Reyes at the time the Corrective Deed was executed and is currently defending[6] the DLR Defendants against claims involving this very property, Mr. Klock testified he hadn't learned of this Corrective Deed until the day before his testimony—February 15, 2016 (DE 597 at 27).[7] When asked whether he advised Mr. De Los Reyes to have the Corrective Deed executed, Mr. Klock responded that he had not, explaining that it was a real estate matter and he was "not a real estate lawyer" (DE 597 at 29). Mr. Klock offered this explanation notwithstanding the fact that his role representing Mr. De Los Reyes involved doing due diligence on the potential acquisition of a company that owned seven funds—at least two of which exist for the purpose of investing in the real estate market and owned numerous property interests—and notwithstanding his earlier statements assessing this very property (DE 597 at 21); (*Id.* at 15) (Mr. Klock: "I knew Secret Lake had problems. It was in foreclosure, I knew taxes were due. Basically all of the—most of the assets were at the point of collapsing. So, therefore, Mr. De Los Reyes, because he had some cash, he was going to be in a position of being able to acquire the assets, but if

---

5. Attorneys in the Southern District of Florida are governed in their professional conduct by the Rules Regulating the Florida Bar. *See* S.D. Fla. Local Rule 11.1(c).

6. As Attorney Joseph Klock was included in the DLR Defendants' Witness List for the Bench Trial (DE 510), the parties agreed he could not participate as an attorney once the trial began (DE 545).

7. The Corrective Quit Claim Deed was included as Exhibit 92 on Plaintiffs' Exhibit List, first submitted to the Court on December 15, 2015 (DE 508 at 67) and again as part of the Pretrial Stipulation on January 12, 2016 (DE 526 at 13).

he did, he had to put cash or they would go. They would either go for a sheriff's sale or maybe foreclosed on. It was junk.").

■ The Florida Rules of Professional Conduct prohibit representation where "there is a substantial risk that the representation of 1 or more clients will be materially limited by ... a personal interest of the lawyer." Fla. Bar Code Prof. Resp. D.R. 4–1.7(a)(2) (2016). *See* Fla. Bar Code Prof. Resp. D.R. 4–1.7 cmt. (2016) ("If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."). The determination of whether a conflict of interest is present is a fact-specific inquiry, particularly so when evaluating a conflict between the interests of a client and their attorney. *See Essex Cty. Jail Annex Inmates v. Treffinger,* 18 F.Supp.2d 418, 432 (D.N.J.1998) ("Because of the virtually limitless cases in which a 'conflict' may theoretically arise when a lawyer's self-interest is implicated, there is a very real danger of analyzing these issues not on fact but on speculation and conjecture. Accordingly, when a conflict of interest issue arises based on a lawyer's self-interest, a sturdier factual predicate must be evident than when a case concerns multiple representation.").

When a conflict is found to exist, a client may provide informed consent to continuing the representation if, among other requirements, "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client." Fla. Bar Code Prof. Resp. D.R. 4–1.7(b)(1) (2016). In order for consent to be informed, the lawyer must have "communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Fla.

Bar Code Prof. Resp. Preamble (2016) (defining "informed consent"). The informed consent must be "confirmed in writing or clearly stated on the record at a hearing." Fla. Bar Code Prof. Resp. D.R. 4–1.7(b)(4) (2016).

Without satisfying itself that both Defendants' counsel and Ms. Rodino had a clear picture of the factual circumstances which served as the basis for this potential conflict, the Court couldn't be assured the scope of any conflict was understood by each. Nor could the Court have determined whether any desire of Defendants' Representative to consent to a conflict was informed. *See In re Paradyne Corp.,* 803 F.2d 604, 608 (11th Cir.1986) ("[T]he court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, and that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections [of right to conflict-free representation]." (quoting *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975) *abrogated in part by Flanagan v. United States,* 465 U.S. 259, 263, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984))).

■ Further, the Court's statements represent "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings," which "do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (emphasis added). *See Chandler v. Volunteers of Am., N. Alabama, Inc.,* 598 Fed. Appx. 655, 659 (11th Cir.2015) ("Generally,

bias sufficient to disqualify a judge must stem from extrajudicial sources.") (internal quotations omitted); (DE 604 at 4) (The Court: "Well, Mr. Klock had some involvement—obviously I finished the jury trial, and I have come to appreciate a little bit better Mr. Klock's involvement in the underlying facts of this case. It seems to me that there is some potential liability on the part of Mr. Klock, and because he was acting for the firm, by extension the firm. So I am inquiring as to whether or not potential conflicts of interest were discussed with the client and whether there was a waiver.").

The transcript reveals the Court only inquired as necessary to evaluate the potential conflict and determine how to proceed, emphasizing its role in assuring that Defendants received conflict-free counsel or consented to any waiveable conflict (DE 604 at 8–9) (The Court: "My obligation is to make sure that De Los Reyes Properties and Rite Timing Services Corp. are getting knowing—are getting conflict-free counsel, or they are knowingly waiving their right to conflict-free counsel."). The Court's statements simply don't rise to the level of those that evidence any favoritism or antagonism that would make fair judgment impossible. *See, e.g., United States v. Wilkerson*, 208 F.3d 794, 797 (9th Cir. 2000) (affirming denial of motion to recuse where the Court questioned the government as to why an additional charge was not brought, "referring to the omission as 'absurd' and 'asinine,' and [telling prosecutor] to '[s]hare that with your head of [the] criminal [division]'"). Although "[a]ny doubts must be resolved in favor of recusal, there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *In re Moody*, 755 F.3d 891, 895 (11th Cir.2014) (internal citations omitted) (internal quotations omitted). Accordingly, Defendants' Motion to Disqualify (DE 611) is **DENIED**.

**DONE and ORDERED** this *21* day of April, 2016, at West Palm Beach in the Southern District of Florida.