[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12223
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cr-00144-MMH-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT E. SPIKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 5, 2016)

Before MARTIN, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Robert Spiker appeals his conviction and 36-month sentence for one count of perjury in violation of 18 U.S.C. § 1623. After Spiker was indicted but before he entered a guilty plea, he solicited the murder of the prosecutor and the magistrate judge involved in his case, and he attempted to murder the prosecutor. Spiker was separately charged and prosecuted for this conduct.

In Spiker's perjury case, the threatened magistrate judge recused himself, but the prosecutor did not. The district judge also remained on the case. On appeal, Spiker argues that the district judge, the replacement magistrate judge, and the prosecutor all should have sua sponte recused themselves. After careful consideration, we find it was not plain error for the judges to remain on the case, but it was plain error for the prosecutor to do so.

I.

When a defendant fails to seek recusal in the district court, we review his recusal claim for plain error. United States v. Berger, 375 F.3d 1223, 1227 (11th Cir. 2004) (per curiam). To find plain error, we must conclude that: "(1) an error occurred, (2) the error was plain, (3) the error affected [the defendant's] substantial rights in that it was prejudicial and not harmless, and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011) (per curiam). To affect a defendant's substantial rights, there must be a reasonable probability that the

2

error affected the outcome of the proceedings. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

## II.

On August 29, 2012, a federal grand jury indicted Spiker on three counts of perjury. Spiker had alleged in several lawsuits that he was abused by correctional officers while serving a separate state sentence, but he later admitted these claims were false. Assistant United States Attorney (AUSA) Mark Devereaux was assigned to prosecute the perjury case. On September 18, 2012, Spiker was arraigned by Magistrate Judge Thomas E. Morris of the Middle District of Florida and pleaded not guilty.

While in pre-trial federal custody, Spiker told a fellow inmate of his intention to kill Devereaux and sought help hiring a hitman. The government learned of Spiker's plan and recorded him soliciting an undercover officer to kill Devereaux. Spiker later attempted to murder Devereaux by concealing a sharpened metal shank on his person before a scheduled court appearance—his design was to lure Devereaux close enough to stab in the neck. The weapon was confiscated at security.

During the same period, Spiker also repeatedly threatened to murder Magistrate Judge Morris. He asked a fellow inmate to help him hire a hitman.

3

Spiker then wrote three letters soliciting Morris's murder to a person the inmate suggested would kill the judge.

In June 2013, Spiker was separately indicted on various charges arising from this conduct. All the judges of the Middle District of Florida were recused from the murder-solicitation case by order of the Chief Judge. Spiker eventually pleaded guilty in the murder-solicitation case and was sentenced to 720-months imprisonment.

Magistrate Judge Morris recused himself from the perjury case on October 18, 2013. Magistrate Judge Monte C. Richardson, also of the Middle District of Florida, replaced Morris. Devereaux continued to prosecute the perjury case. After the murder attempt against him, he appeared at Spiker's competency hearing, negotiated and accepted a plea agreement from Spiker, and appeared at Spiker's change-of-plea hearing. Magistrate Judge Richardson recommended acceptance of Spiker's plea. District Judge Marcia Morales Howard, also of the Middle District, accepted the plea.

Spiker's guideline range was 30–37 months. Devereaux appeared at the sentence hearing along with one other AUSA. The government requested a sentence of 36-months imprisonment, partly relying on Spiker's murder threats. Judge Howard sentenced Spiker to 36-months imprisonment, to run consecutively to his 720-month sentence in the murder-solicitation case. Spiker timely appealed.

III.

A.    JUDGES RICHARDSON AND HOWARD

A federal judge must recuse herself in certain cases, including "any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  Judges must sua sponte recuse themselves when this statutory ground exists.  United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989).

In determining if recusal is necessary, we consider "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (quotation omitted).  Any doubts should be resolved in favor of recusal.  Id.

The decision by Magistrate Judge Richardson and District Judge Howard not to recuse themselves in Spiker's perjury case—merely because they belonged to the same court as a threatened judge—was not plain error.  In In re Moody, 755 F.3d 891 (11th Cir. 2014) (per curiam), we rejected the notion that related bomb attacks on Judge Robert Vance and the Eleventh Circuit generally[1] required recusal of all Eleventh Circuit judges in the bomber's later habeas case.  Id. at 897–98. After considering the precedent governing recusal issues, we ruled that it was proper for judges actively sitting on the Court at the time of the bombing to recuse

---

[1] In addition to the bomb that killed Judge Vance, Mr. Moody sent a bomb to the Eleventh Circuit's headquarters and sent threatening letters to other Eleventh Circuit judges.  Id. at 895.

themselves because they "were potential victims of the alleged attack." Id. at 896. But because no one on the panel in Moody had been a potential victim or "enjoyed a close personal or professional relationship with [the victim]," we found recusal unnecessary. Id. at 895.

Spiker specifically threatened Magistrate Judge Morris, not Magistrate Judge Richardson, District Judge Howard, or the Middle District of Florida generally. There is no evidence of close personal ties between either judge and Magistrate Judge Morris. Thus, it was not error for these judges not to recuse themselves, let alone plain error.

B.    AUSA DEVEREAUX

AUSA Devereaux's failure to recuse himself after Spiker's threats and attempt to kill him was plain error. Members of a U.S. Attorney's staff should not participate "in a particular investigation or prosecution if such participation may result in a personal . . . conflict of interest, or the appearance thereof." 28 U.S.C. § 528. Although a stronger showing of conflict is required for prosecutorial recusal, United States v. Isaacson, 752 F.3d 1291, 1308 n.11 (11th Cir. 2014), we "categorically forbid[] an interested person from controlling the defendant's prosecution," United States v. Siegelman, 786 F.3d 1322, 1329 (11th Cir. 2015) (emphasis omitted). The Supreme Court has recognized "[t]he requirement of a disinterested prosecutor," because "[a] prosecutor exercises considerable

6

discretion" in a criminal proceeding, and these decisions "are all made outside the supervision of the court." Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 807, 107 S. Ct. 2124, 2137 (1987).

Unlike Magistrate Judge Richardson and District Judge Howard, AUSA Devereaux was a particular, intended victim of Spiker's threats. Spiker repeatedly revealed his intent to "ice and dice" Devereaux during March and April 2013, including by attempting to hire an assassin to murder him. Spiker's vendetta against Devereaux culminated in a thwarted knife attack on April 10, 2013. The government knew of Spiker's plans during this time through fellow inmates, undercover officers, Spiker's handwritten notes, and recorded conversations. On this record, Devereaux clearly faced a conflict in prosecuting Spiker.

Nevertheless, Devereaux continued playing a lead role in the perjury case. On April 5, 2013, he alone signed a motion for a mental examination of Spiker. On October 30, 2013, he appeared alone on behalf of the government at Spiker's competency hearing. He negotiated and signed Spiker's plea agreement on January 24, 2014 along with one other AUSA, and then appeared alone on the government's behalf at Spiker's change-of-plea hearing. Finally, on April 28, 2014, Devereaux appeared with one other AUSA at Spiker's sentence hearing. For over a year after Spiker's murder plot came to light (and almost came to pass), Devereaux persisted in prosecuting him.

When a potentially conflicted prosecutor has played a very minor role, we have held that her "limited involvement" does not deprive a defendant of his right to a disinterested prosecutor.  See Siegelman, 786 F.3d at 1328–29; United States v. Scrushy, 721 F.3d 1288, 1307–08 (11th Cir. 2013).  But in these companion cases concerning the same prosecutor, the prosecutor voluntarily recused herself,[2] and her only further involvement was through several e-mails she sent to the replacement prosecutors.  Siegelman, 786 F.3d at 1327–28; Scrushy, 721 F.3d at 1307–08.

Unlike in Scrushy and Siegelman, the prosecutor here had a clear conflict and failed to voluntarily recuse himself.  As we recognized in Siegelman, "Young categorically forbids an interested person from controlling the defendant's prosecution."  786 F.3d at 1329 (emphasis omitted).  It was plain error for Devereaux control Spiker's prosecution.

Next, we must consider whether this plain error affected Spiker's substantial rights.  See Perez, 661 F.3d at 583.  The right to a disinterested prosecutor is important and pervades the entire case.  The Supreme Court has said:

> [P]rosecution by an interested party may be influenced by improper motives.  A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be

---

[2] Indeed, she recused herself despite an explicit finding from the Department of Justice that no actual conflict existed.  Scrushy, 721 F.3d at 1307.

8

charged with what offenses, which persons should be utilized as witnesses, whether to enter plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity.

Young, 481 U.S. at 807, 107 S. Ct. at 2137. This prong of plain-error analysis asks us to consider whether the error affected the outcome of the proceedings. Rodriguez, 398 F.3d at 1299. Given the far-reaching effect of an interested prosecutor prosecuting Spiker, as well as Spiker's high-end guideline sentence, we find that this error affected Spiker's substantial rights.

Finally, we ask whether the plain error seriously affected the fairness, integrity, or public reputation of a judicial proceeding. See Perez, 661 F.3d at 583. We conclude that it did. See Young 481 U.S. at 811, 107 S. Ct. at 2139 (plurality) ("[A]n interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general.").

The district court plainly erred by allowing Devereaux to continue prosecuting Spiker after Spiker threatened to and actually attempted to murder him. We REVERSE and REMAND for a new trial or plea proceeding.

**REVERSED and REMANDED.**