[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10689
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-20544-KMW-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTRON LATROY LANGSTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 27, 2016)

Before TJOFLAT, HULL and JILL PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Antron Langston appeals his total 117-month sentence

for conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a)

(Count 1), and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count 3).  On appeal, Langston argues that his 33-month sentence on Count 1 is substantively unreasonable and that the district court erred in imposing a consecutive 84-month sentence on Count 3.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.     Offense Conduct

The factual proffer supporting Langston's guilty plea and the Presentence Investigation Report ("PSI") contain these undisputed facts.

Langston and his codefendant, Dalton Armster, entered the One Stop Mini Mart, approached the counter, and asked for a pack of cigars.  Armster clipped a magazine into a machine firearm, pointed the firearm at the store clerk, and ordered the clerk to give him all the money in the store's cash register.  Simultaneously, Langston jumped over the counter to get to the cash register.  The store clerk immediately opened the register and put up his hands.  Langston took approximately $5,000 in cash from the register and a Glock .22 caliber firearm located underneath a shelf by the register.  The store's video security cameras captured the robbery.

Following the robbery, the store clerk called 911 and informed law enforcement officers that he recognized the assailants as previous patrons of the

2

store, but did not know the assailants by name.  Law enforcement received anonymous tips identifying the two assailants as Armster and Langston. Ultimately, the store clerk identified Armster in a photo lineup as the assailant who held the firearm and identified Langston in a photo lineup as the assailant who jumped over the counter and took the money from the register.  Armster was arrested and admitted that he and Langston had robbed the Mini Mart.  Langston was arrested approximately one month later.

## B.    Indictment and Guilty Plea

A federal grand jury indicted Langston on charges of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); committing Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count 2); brandishing a firearm during a crime of violence, specifically Counts 1 and 2, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count 3); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 2 (Count 5). Count 1 charged that Armster and Langston conspired and agreed to rob an employee at the Mini Mart "against the will of that person, by means of actual and threatened force, violence, and fear of injury to said person."  Count 3 charged that during the crime of violence in Count 1, the firearm was brandished, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (aiding and abetting).

3

Pursuant to a written plea agreement, Langston pled guilty to Counts 1 and 3. He also executed a factual proffer containing the offense conduct outlined above.

Before accepting Langston's guilty plea, the district court conducted a colloquy and reviewed with Langston the elements of the crimes to which he was pleading guilty. With regard to Count 1, the district court informed Langston that he was pleading guilty to (1) agreeing to commit a Hobbs Act robbery, which would involve "acquiring someone else's property against the person's will using actual threats, force or violence or causing the victim to fear harm"; (2) knowing of the plan to commit the robbery; and (3) voluntarily participating in and helping to achieve the goal of committing the robbery. Langston affirmed that he understood the elements of Count 1.

With regard to Count 3, the district court informed Langston that he was pleading guilty to committing the robbery offense charged in Count 1, which was characterized as a crime of violence, and to brandishing a firearm in furtherance of that crime. Langston affirmed that he understood the elements of Count 3.

The district court explained to Langston that by pleading guilty, he was waiving his right to have the government establish his guilt beyond a reasonable doubt by proving each and every element of the crimes he was charged with committing, and Langston affirmed that he understood that waiver. Langston

4

admitted that the facts in the proffer were true and that the government could prove them beyond a reasonable doubt. After reviewing the provisions of the written plea agreement with Langston, the district court accepted his guilty pleas and adjudicated him guilty on Counts 1 and 3.

## C.    PSI

In addition to the facts recounted above, the PSI indicated that both Armster and Langston were equally culpable in committing the crimes.

As to Count 1, the PSI recommended: (1) a base offense level of 20, pursuant to U.S.S.G. § 2B3.1(a); a one-level increase in the offense level, pursuant to U.S.S.G. § 2B3.1(b)(6), because a firearm was taken during the offense; and (3) a three-level reduction, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), for acceptance of responsibility. This resulted in a total adjusted offense level of 18 for Count 1.

The PSI assigned Langston four criminal history points and calculated a criminal history category of III because he had 2004 Florida convictions for grand theft and resisting an officer without violence and 2012 Florida convictions for burglary, arson, and criminal mischief. The PSI included several prior adult convictions and juvenile adjudications for which no criminal history points were scored, including convictions for resisting an officer with violence, trespass to a structure or conveyance, and cocaine possession in 1999; loitering in 2001; cocaine possession in 2002; and driving without a valid driver's license in 2008. The PSI

5

also described eight other instances of juvenile and adult criminal conduct for which Langston was not prosecuted, including possession of a concealed firearm by a minor, armed robbery, and battery.

With a total offense level of 18 and a criminal history category of III, the PSI recommended an advisory guidelines range for Count 1 of 33 to 41 months' imprisonment.  The statutory maximum for Count 1 was 20 years' imprisonment.

As to Count 3, the PSI stated that, pursuant to 18 U.S.C. § 924(c)(1)(a)(ii) and (D)(ii), the mandatory minimum sentence was seven years, to be served consecutive to any other sentence.  As such, U.S.S.G. § 5G1.2(a) also required a consecutive sentence of 84 months.  Langston did not file any objections to the PSI.  **]**

### D.    Sentencing Hearing

At sentencing, Langston did not object to the factual allegations or guidelines calculations in the PSI.  The district court adopted the PSI in its entirety and concluded that the advisory guidelines range for Count 1 was 33 to 41 months and that Count 3 carried a mandatory minimum 84-month sentence to be served consecutively to any other sentence imposed.

Langston requested a downward variance on Count 1, arguing that Armster, Langston's codefendant who had pled guilty to the same charges, had received a 100-month sentence and that the district court had granted Armster a downward

variance to reach that sentence.  Langston contended that the district court should impose a sentence that was equal to or less than Armster's sentence to avoid an unwarranted sentencing disparity and because Armster had planned the robbery, recruited and directed Langston, and went into the store armed and pointed his gun at the store clerk and thus was more culpable.  Langston also argued that he was under the influence of drugs and alcohol when Armster recruited him, had never adequately been treated for his substance abuse problems, and was essentially homeless at the time he committed the offense.  Langston asked the district court to vary downward 17 months to a 100-month total sentence.

The government recommended a low-end guidelines sentence on Count 1 and argued that, because of Langston's criminal history category of III, it was appropriate for him to receive a higher sentence than Armster, who had a criminal history category of II.  The government noted that, according to both the video of the robbery and the PSI, both Langston and Armster played equal roles in the offense and were equally culpable.

The district court stated that it had considered the statements of all parties, the PSI, and the statutory factors in § 3553(a).  The district court acknowledged Langston's mitigating arguments, his supportive family, and desire to participate in a substance abuse program.  However, the district court expressed concern about Langston's past criminal conduct, including three instances of unprosecuted

7

criminal conduct listed in the PSI: possession of a concealed weapon at age 14, armed robbery, and battery. Addressing the differences between Armster and Langston, the district court noted that it was focusing not on the difference between their respective criminal history categories, but on "the content and nature of the past transgressions." The district court concluded that the low-end guidelines sentence recommended by the government was appropriate. The district court sentenced Langston to 33 months' imprisonment as to Count 1 and a consecutive 84 months as to Count 3, for a total 117-month sentence. Langston did not object to the district court's findings of fact or the manner in which the sentence was pronounced.

## II.  DISCUSSION

### A.    Substantive Reasonableness of 33-month Sentence on Count 1

The substantive reasonableness of a sentence—whether inside or outside the applicable guidelines range—is subject to a deferential abuse-of-discretion standard of review. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).[1] The party who challenges the sentence bears the burden of showing that the sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).[2]

---

[1]Langston does not argue that his sentence is procedurally unreasonable.

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense,

For the reasons discussed below, Langston's mandatory minimum seven-year (84-month) sentence on Count 3 was required by statute. See 18 U.S.C. § 924(c)(1)(A)(ii), (D)(ii). Thus, Langston's substantive reasonableness argument relates solely to his 33-month sentence on Count 1, which was at the low end of the advisory guidelines range of 33 to 41 months.

Langston has not met his burden of establishing that his sentence was unreasonable in light of the record and the § 3553(a) factors. The district court explicitly noted that it had considered the § 3553(a) factors and concluded that the downward variance Langston requested was not warranted. In reaching this conclusion, the district court focused particularly on Langston's criminal history, which it found concerning. The district court's concern was supported by the record, which showed that Langston had multiple prior convictions and had engaged in other violent behavior that did not result in criminal convictions.

Langston argues that the 17-month disparity between his sentence and that of his codefendant Armster makes his sentence unreasonable. But, Langston has not shown that the disparity between his sentence and the sentence the district court imposed on Armster was unwarranted because, although they pled guilty to

---

to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

identical charges, they did not have "similar records" and thus were not similarly situated defendants.  See United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (explaining that sentencing disparities are unwarranted only where the defendants are similarly situated); 18 U.S.C. § 3553(a)(6).  The court recognized this when it stated that "the content and nature of the past transgressions" of the two defendants led it to conclude that a low-end guidelines sentence was appropriate in Langston's case, even though it had granted Armster's request for a downward variance.

Langston's complaint that the district court primarily relied upon prior criminal behavior that went unprosecuted likewise is without merit because the sentencing court was entitled to consider those acts as relevant to Langston's background and character in imposing its sentence.  See United States v. Tome, 611 F.3d 1371, 1379 (11th Cir. 2010) (stating that a district court appropriately considered a withheld adjudication in considering a defendant's background, character, and conduct).  Moreover, because Langston failed to object to the PSI's descriptions of those nolle prossed charges, those facts were admitted for sentencing purposes.  See United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010).

In any event, even if we assumed arguendo that the 17-month disparity between Langston and Armster was "unwarranted," this would not render

10

Langston's sentence substantively unreasonable because he has failed to demonstrate that the alleged disparity outweighed the other § 3553(a) factors that the district court considered.  The need to avoid sentencing disparities is only one of several factors the district court considered.  The district court was entitled to give more weight to other factors—such as Langston's history and characteristics—in making its sentencing decision.  See United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).  Thus, Langston has failed to show that the district court abused its discretion in weighing the § 3553(a) factors.

Finally, the district court's 33-month sentence on Count 1 represented the lowest sentence under the applicable guidelines range of 33 to 41 months, which this Court would ordinarily expect to be reasonable.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).  The sentence was also well-below the 20-year statutory maximum for Count 1, a  further indication of its reasonableness.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

Based on the foregoing, Langston has not shown that his 33-month sentence on Count 1 was substantively unreasonable.

**B.    Consecutive Sentence on Count 3**

Under § 924(c)(1)(A), if the defendant used or carried a firearm during and in relation to a crime of violence or drug trafficking crime, or possessed a firearm in furtherance of such crimes, the district court must impose a separate consecutive

11

sentence.  And, if, as here, the defendant brandished the firearm, the consecutive sentence is "not less than 7 years."  18 U.S.C. § 924(c)(1)(A)(ii).

For purposes of § 924(c), a "crime of violence" is defined as a felony offense that:

> (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  The former clause is referred to as the "use-of-force clause," and the later clause as the "§ 924(c)(3)(B) residual clause."  In re Saint Fleur, 824 F.3d 1337, 1339 (11th Cir. 2016).

A separate but similar sentencing provision, the Armed Career Criminal Act ("ACCA"), defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated

crimes" and, finally, what is commonly called the "residual clause." United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).

In 2015, before Langston was sentenced, the Supreme Court in Johnson v. United States held that the residual clause of the ACCA is unconstitutionally vague. 576 U.S. ___, 135 S. Ct. 2551, 2563 (2015). In holding that the ACCA's residual clause is void, the Court clarified that it did not call into question the application of the elements clause or the enumerated crimes of the ACCA's definition of a violent felony. Id.

Here, Count 3 in the indictment, to which Langston pled guilty, expressly charged, inter alia, that the crime of violence was the Hobbs Act conspiracy in Count 1 and that the firearm was brandished during the crime of violence. As noted earlier, Langston was charged with aiding and abetting the brandishing of the firearm. Further, during the plea colloquy, Langston acknowledged that the pertinent crime of violence was the Hobbs Act conspiracy charged in Count 1.

Now, for the first time on appeal, Langston argues that the district court erred in sentencing him to a consecutive 84-month term on Count 3 because, in light of Johnson, conspiracy to commit Hobbs Act robbery cannot serve as a predicate "crime of violence" under 18 U.S.C. § 924(c)(1)(A)(ii).

While we ordinarily review de novo whether a specific offense is a crime of violence under § 924(c), we review Langston's newly raised claim only for plain

13

error.  See United States v. Rodriguez, 751 F.3d 1244, 1257 (11th Cir.), cert. denied, 134 S. Ct. 310 (2014).  For an error to be plain, it must be "contrary to explicit statutory provisions or to on-point precedent in this Court or the Supreme Court."  United States v. Hoffman, 710 F.3d 1228, 1232 (11th Cir. 2013) (quotation marks omitted); see also United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).

Here, Count 3 of the indictment alleged that Langston used and carried a firearm "during and in relation to a crime of violence" and possessed the firearm "in furtherance of a crime of violence" as charged in Count 1.  Langston then acknowledged, in both the factual proffer and during the plea colloquy conducted by the district court, that the government could prove each element of Count 3 beyond a reasonable doubt.  As the district court explained and Langston acknowledged, those elements were (1) that he committed conspiracy to commit Hobbs Act robbery, a crime of violence, and (2) that he brandished a firearm in furtherance of that crime of violence.  Langston's knowing, unconditional, and voluntary plea constituted an admission as to every element of Count 3.  See McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969). Langston therefore admitted that conspiracy to commit Hobbs Act robbery was a crime of violence and thus arguably waived any defect in his sentencing arising out of the fact that it was classified as such.  See United States v. Patti, 337 F.3d 1317,

14

1320 (11th Cir. 2003); see also United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 762 (1989) (stating that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilty and a lawful sentence").

However, we need not decide that waiver issue because Langston cannot show that the alleged error was plain. The district court did not indicate under which § 924(c)(3) clause that conspiracy to commit Hobbs Act robbery qualified as a crime of violence. Nor did the district court have to because Langston agreed that it qualified as a crime of violence. So, we would need to examine if the crime qualified under either of the clauses in § 924(c)(3).

Neither the Supreme Court nor this Court has extended Johnson's § 924(e) residual clause ruling to conclude that the § 924(c)(3)(B) residual clause is unconstitutionally vague. See In re Pinder, 824 F.3d 977, 978-79 (11th Cir. 2016) (noting that "[o]ur Court hasn't decided if Johnson applies to § 924(c)(3)(B)" and that "the law is unsettled" as to whether Johnson even invalidates any sentences imposed pursuant to the § 924(c)(3)(B) residual clause). Therefore, the district court did not plainly err because it is not obvious and clear under current law that conspiracy to commit Hobbs Act robbery is not a crime of violence under either the use-of-force clause or the § 924(c)(3)(B) residual clause.

15

Likewise, neither the Supreme Court nor this Court has concluded that conspiracy to commit Hobbs Act robbery cannot categorically qualify as a crime of violence under the use-of-force clause. See id. at 979 & n.1. Moreover, this Court has concluded that a conviction for the substantive offense of Hobbs Act robbery qualifies as a crime of violence under the use-of-force clause after Johnson. See In re Saint Fleur, 824 F.3d at 1340; see also In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016) (concluding that a "conviction for aiding and abetting a Hobbs Act robbery qualifies as a 'crime of violence' under the § 924(c)(3)(A) use-of-force clause, without regard to the § 924(c)(3)(B) residual clause"). In Saint Fleur, we explained that the defendant was charged with, and pled guilty to, committing the Hobbs Act robbery "by means of actual and threatened force, violence, and fear of injury" and that these elements "as replicated in the indictment, require the use, attempted use, or threatened use of physical force against 'against the person or property of another'" required by § 924(c)(3)(A)'s use-of-force clause. 824 F.3d at 1341.

Given that there is no direct precedent from this Court or the Supreme Court directly resolving the issue of whether conspiracy to commit that substantive Hobbs Act robbery qualifies a crime of violence under either clause, any alleged error cannot be plain. See Hoffman, 710 F.3d at 1232.

16

For these reasons, we find no reversible error in the district court's decision to treat Langston's Hobbs Act robbery conspiracy, charged in Count 1, as a crime of violence under § 924(c)(3), and impose a consecutive 84-month sentence on Count 3.

**AFFIRMED.**